## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

ANDRE LAMONT JACKSON,

                  Petitioner,                Case Number: 2:14-CV-13919
                                                HONORABLE VICTORIA A. ROBERTS

v.

BONITA HOFFNER,

                  Respondent.

_____/

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND DENYING A CERTIFICATE OF APPEALABILITY

This matter is before the Court on Andre Lamont Jackson's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.   Petitioner was convicted of first-degree premeditated murder, MICH. COMP. LAWS § 750.316, conspiracy to commit murder, MICH. COMP. LAWS § 750.157a, assault with intent to commit murder, MICH. COMP. LAWS § 750.83, and possession of a firearm during the commission of a felony, MICH. COMP. LAWS § 750.227b, following a joint jury trial with co-defendants Quonshay Douglas-Ricardo Mason and Kainte Hickey in the Wayne County Circuit Court. Petitioner, through counsel, raises nine claims for habeas corpus relief.  Respondent, through the Attorney General's Office, has filed an answer in opposition arguing that six of Petitioner's claims are procedurally defaulted and that all of the claims lack merit.  The Court finds no basis for habeas corpus relief and denies the petition.

I.      **Background**

Petitioner's convictions arise from a shooting in the City of Detroit on September

2, 2007.  The Michigan Court of Appeals described the circumstances leading to

Petitioner's convictions as follows:

> Defendant's convictions arose from the fatal shooting of Bennie Peterson
> and the nonfatal shooting of Donteau Dennis on the east side of Detroit
> during the early morning hours of September 28, 2007.  According to the
> prosecution's evidence, codefendant Quonshay Douglas-Ricardo Mason
> persuaded Peterson and Dennis to leave Peterson's house under the pretext
> that they were going to rob a drug addict who was carrying a large amount
> of cash to purchase drugs.  Mason drove Peterson and Dennis, in Peterson's
> minivan, to a house on Malcolm Street and told Dennis to purchase drugs in
> the house to use as bait in the robbery.  Defendant and codefendant Kainte
> Hickey had followed Mason in defendant's Jeep.  After Dennis left
> Peterson's minivan to purchase the drugs, Mason and defendant parked
> their vehicles so that the minivan was blocked in and could not be driven
> away.  Mason then got out of the minivan and defendant got out of his Jeep,
> and the two of them went to the side of the minivan and began firing guns at
> Peterson, who was still inside.  At the same time, Hickey emerged from
> defendant's Jeep and fired several shots at Dennis as he crossed the street.
> Peterson was killed.
>
> Officer Frank Senter arrived and found Dennis lying wounded in a
> backyard.  Dennis remarked that he did not believe that he would survive
> and told Officer Senter that Hickey had shot him over a drug debt.
> Although Officer Senter did not recall hearing Dennis say anything about
> Peterson, defendant, or Mason, he stated that Dennis made additional
> statements that Officer Senter could not understand because of Dennis's
> condition.  Later, while Dennis was hospitalized, he gave a statement
> implicating defendant and Mason in the shooting attack on Peterson.  At
> trial, Dennis again identified defendant and Mason as the persons who shot
> at Peterson inside the minivan.

*People v. Jackson*, 292 Mich. App. 583, 586-87 (Mich. Ct. App. 2011).

Following a jury trial in Wayne County Circuit Court, Petitioner was convicted

and sentenced as follows:  life in prison for the first-degree murder and conspiracy convictions and 225 months to 40 years' imprisonment for the assault conviction, with those sentences to be served concurrently but consecutively to a two-year term of imprisonment for the felony-firearm conviction.

Petitioner filed an appeal of right in the Michigan Court of Appeals raising claims of insufficient evidence, prosecutorial misconduct, trial court error in handling of juror confusion, Confrontation Clause violation, trial court bias, ineffective assistance of counsel for failing to provide discovery materials and failing to challenge medicated witness's statements as unreliable.  The Michigan Court of Appeals affirmed Petitioner's convictions.  *Id.*  Petitioner filed an application for leave to appeal in the Michigan Supreme Court, raising the same claims.  The Michigan Supreme Court denied leave to appeal.  *People v. Jackson*, 490 Mich. 882 (Mich. Oct. 5, 2011).

Petitioner returned to state court to file a motion for relief from judgment, raising several jury instruction-related claims and a claim that counsel was ineffective for failing to object to the instructions.  The trial court denied the motion.  4/25/13 Order, ECF No. 5-8.  Petitioner filed an application for leave to appeal in the Michigan Court of Appeals. The Michigan Court of Appeals denied leave to appeal.  *People v. Jackson*, No. 318197 (Mich. Ct. App. Dec. 23, 2013), ECF No. 5-11.  The Michigan Supreme Court also denied leave to appeal.  *People v. Jackson*, 496 Mich. 858 (Mich. 2014).

Petitioner, through counsel, then filed the pending habeas corpus petition.  He raises these claims:

3

I.      Petitioner's due process rights were violated when he was convicted pursuant to insufficient evidence to support the convictions of first degree murder, conspiracy to commit murder, and assault with intent to commit murder.

II.     The prosecutor violated petitioner's due process rights by failing to disclose a transcript of a prosecution witness' testimony given during an investigative subpoena.

III.    The trial court violated Petitioner's due process rights by failing to ensure that the jury members had not been exposed to extraneous influences that led to the dismissal of one of the jurors.

IV.     The trial court violated petitioner's due process rights by failing to exclude statements from an officer concerning his interview of one of the victims at the hospital with the assistance of a nurse who was not called as a witness at trial.

V.      The trial court violated petitioner's due process rights by demonstrating judicial bias against the petitioner during the trial.

VI.     Petitioner was denied his constitutional right to effective assistance of counsel at trial.

VII.    The trial court violated petitioner's due process rights in its instruction to the jury, when it failed to instruct the jury as to the intent required and the assistance necessary for aiding and abetting, thereby denying him the due process right to a properly instructed jury.

VIII.   Petitioner was denied due process when the prosecutor argued that petitioner acted as a principal while advancing an alternative aiding and abetting theory, thereby making it impossible to determine which theory of guilt the jury unanimously agreed upon.

IX.     The trial judge violated petitioner's due process right to a properly instructed jury with its instructions to the jury regarding first degree murder.

## II.     Standard

Review of this case is governed by the Antiterrorism and Effective Death Penalty

Act of 1996 ("AEDPA"). Under the AEDPA, a state prisoner is entitled to a writ of

habeas corpus only if he can show that the state court's adjudication of his claims –

> (1) resulted in a decision that was contrary to, or involved an unreasonable
> application of, clearly established Federal law, as determined by the
> Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination
> of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A decision of a state court is "contrary to" clearly established federal law if the

state court arrives at a conclusion opposite to that reached by the Supreme Court on a

question of law or if the state court decides a case differently than the Supreme Court has

on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405

(2000).  An "unreasonable application" occurs when "a state court decision unreasonably

applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 408.  "[A]

federal habeas court may not issue the writ simply because that court concludes in its

independent judgment that the relevant state-court decision applied clearly established

federal law erroneously or incorrectly." *Id.* at 411.

The Supreme Court has explained that "[a] federal court's collateral review of a

state-court decision must be consistent with the respect due state courts in our federal

system." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).  The "AEDPA thus imposes a

'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'"  *Renico v. Lett*, 559 U.S. 766, 773 (2010) (quoting *Lindh v. Murphy*, 521 U.S. 320, 333 n. 7 (1997); *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam)).  "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011).  The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 102. Furthermore, pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or ... could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of th[e Supreme] Court." *Id.*

Although 28 U.S.C. § 2254(d), as amended by the AEDPA, does not completely bar federal courts from relitigating claims that have previously been rejected in the state courts, it preserves the authority for a federal court to grant habeas relief only "in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with" Supreme Court precedent.  *Id.*  Indeed, "Section 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Id.* (quoting *Jackson v. Virginia*, 443 U.S. 307, 332 n. 5 (1979)) (Stevens, J., concurring)). Therefore, in order to obtain habeas relief in federal court, a state prisoner is required to

show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103, 131 S. Ct. at 786–87.

Additionally, a state court's factual determinations are entitled to a presumption of correctness on federal habeas review. See 28 U.S.C. § 2254(e)(1).  A petitioner may rebut this presumption with clear and convincing evidence.  *See Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998).  Moreover, habeas review is "limited to the record that was before the state court." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

## III.   Discussion

### A.   Procedural Default

Respondent argues that several of Petitioner's claims are procedurally defaulted. "[F]ederal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits." *Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003), citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997).  "Judicial economy might counsel giving the [other] question priority, for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law." *Lambrix*, 520 U.S. at 525.  In this case, the Court finds that the interests of judicial economy are best served by addressing the merits of Petitioner's claims.

B.     **Sufficiency of the Evidence**

Petitioner claims that he is entitled to habeas corpus relief because the prosecution presented insufficient evidence to sustain his convictions for first-degree murder, conspiracy to commit murder, and assault with intent to commit murder.  Respondent argues that this claim lacks merit.

The Due Process Clause "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970).  On direct review, review of a sufficiency of the evidence challenge focuses on whether "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original).  A federal habeas court views this standard through the framework of 28 U.S.C. § 2254(d).  *Martin v. Mitchell*, 280 F.3d 594, 617 (6th Cir. 2002).  In the habeas context, a sufficiency of the evidence claim "must survive two layers of deference to groups who might view facts differently" than a reviewing court on habeas review – the factfinder at trial and the state court on appellate review – as long as those determinations are reasonable.  *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009).  Further, the *Jackson* standard must be applied "with explicit reference to the substantive elements of the criminal offense as defined by state law."  *Brown v. Palmer*, 441 F.3d 347, 351 (6th Cir. 2006), quoting *Jackson*, 443 U.S. at 324 n. 16.

Under Michigan law, to convict a defendant of first-degree murder, the

prosecution must prove that the defendant intentionally killed the victim and that the killing was premeditated and deliberate. *People v. Anderson*, 531 N.W.2d 780, 786 (Mich. Ct. App. 1995). Premeditation and deliberation may be established by evidence showing: "(1) the prior relationship of the parties; (2) the defendant's actions before the killing; (3) the circumstances of the killing itself; and (4) the defendant's conduct after the homicide." *People v. Schollaert*, 194 Mich. App. 158, 170 (1992). Direct or circumstantial evidence and reasonable inferences arising from that evidence may constitute satisfactory proof of the elements of an offense, *People v. Jolly*, 442 Mich. 458, 466 (1993), including the identity of the perpetrator, *Dell v. Straub*, 194 F. Supp. 2d 629, 647 (E.D. Mich. 2002), and the defendant's intent or state of mind. *People v. Dumas*, 454 Mich. 390, 398 (1997).

To convict a defendant under an aiding and abetting theory, a prosecutor must show: (1) the crime charged was committed by the defendant or some other person; (2) the defendant performed acts or gave encouragement that assisted the commission of the crime; and (3) the defendant intended the commission of the crime or knew that the principal intended to commit the crime at the time he gave aid and encouragement. *Riley v. Berghuis*, 481 F.3d 315, 322 (6th Cir. 2007), *citing People v. Carines*, 597 N.W.2d 130, 135 (1999). An "aider and abettor's state of mind may be inferred from all the facts and circumstances. Factors that may be considered include a close association between the defendant and the principal, the defendant's participation in the planning or execution of the crime, and evidence of flight after the crime." *People v. Carines*, 460 Mich. 750,

758 (1999).  "The quantum of aid or advice is immaterial as long as it had the effect of inducing the crime."  *People v. Lawton*, 196 Mich. App 341, 352 (1992).

Under Michigan law, anyone who knowingly agrees with someone else to commit first degree premeditated murder is guilty of conspiracy to commit first degree premeditated murder.  *Bechtol v. Prelesnik*, 568 F. App'x 441, 449 (6th Cir. 2014). Finally, the elements of assault with intent to commit murder are (1) an assault, coupled with (2) specific intent to kill, (3) which, if successful, would make the killing murder. *People v. Taylor*, 422 Mich. 554 (Mich. 1985); *see Warren v. Smith*, 161 F.3d 358, 361 (6th Cir. 1998).

The Michigan Court of Appeals held that sufficient evidence was presented to sustain Petitioner's convictions:

> In this case, Dennis testified that before they departed Peterson's house, defendant was waiting in a Jeep on the street, positioning himself in a manner that prevented Dennis from seeing whether someone else was inside, and defendant then followed the minivan to Malcolm Street where Mason took Dennis and Peterson.  At Malcolm Street, defendant and Mason aligned their respective vehicles so that the minivan was blocked in and could not be driven away.  Hickey, whose presence in the Jeep had been concealed by defendant, got out of the Jeep and pursued Dennis with a gun while defendant and Mason both began shooting toward the minivan at Peterson.  Viewed in a light most favorable to the prosecution, this evidence supports an inference that defendant, Mason, and Hickey were acting in concert according to a premeditated plan to kill Peterson and Dennis.  Their plan involved enticing Peterson and Dennis to leave Peterson's home under the pretext that they were going to commit a robbery.  When they reached the intended location, they acted together to separate Dennis and Peterson so that Mason and defendant could shoot Peterson and Hickey could make a surprise attack on Dennis.  This evidence supports defendant's convictions for the first-degree murder of Peterson, conspiracy to commit murder, and aiding and abetting Hickey's assault with intent to murder Dennis.  In

addition, the evidence that defendant was armed with a gun during these offenses supports his felony-firearm conviction.

Although defendant argues that Dennis was not a credible witness and gave inconsistent statements concerning defendant's involvement, the credibility of his testimony was for the jury to resolve. It was within the jury's province to determine that Dennis's testimony was truthful, notwithstanding some discrepancies in his prior statements.

*Jackson*, 292 Mich. App. at 589-90.

Petitioner's specific objections to the Michigan Court of Appeals' decision, which focus on the brevity of the decision, are meritless. Petitioner argues that the Michigan Court of Appeals' decision lacked analysis, relied on boilerplate language, was too brief, and failed to specifically cite *Jackson*. The AEDPA does not require a state court to state its reasons for denying a claim. *Harrington v. Richter*, 562 U.S. 86, 98 (2011). A state court " need not cite or even be aware of [relevant Supreme Court] cases."[1] *Id.* On habeas review, a petitioner must show that there is "no reasonable basis" for the state court to deny relief. *Id.* Thus, Petitioner's challenge to the quality and content of the state court's opinion fails.

When assessing a sufficiency of the evidence claim on habeas review, the Court may not re-weigh evidence or redetermine witness credibility. *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983). The Court presumes the correctness of the facts relied upon by the Michigan Court of Appeals; Petitioner has not rebutted that presumption. The

---

[1] Although not required to cite *Jackson,* the Michigan Court of Appeals clearly applied the *Jackson* standard and cited a Michigan Supreme Court case which cited and discussed the *Jackson* standard. *People v. Nowack*, 462 Mich. 392, 399 (2000).

11

evidence establishing Petitioner's identity as one of the shooters, that he worked in concert with Mason, and Hickey to execute a plan to murder Peterson and Dennis, and that he assisted Hickey's efforts to attack Dennis, as set forth by the Michigan Court of Appeals, was sufficient to sustain the conviction.

### C.   *Brady* Violation Claim

Petitioner next argues that the prosecutor violated *Brady v. Maryland,* 373 U.S. 83 (1963).  Specifically, he argues that the prosecutor failed to disclose the existence of a transcript of a statement Donteau Dennis gave to the prosecutor pursuant to an investigative subpoena.  Petitioner argues that the transcript potentially may have provided impeachment evidence.  Defense counsel learned about the existence of the transcript during the prosecutor's direct examination of Dennis.  The prosecutor was unaware that the transcript had not been disclosed to the defense.  Because of this late disclosure, the trial court precluded the prosecution from using it in its case-in-chief. Defense counsel was provided time to review the thirty-page transcript.  *Jackson*, 292 Mich. App. at 591.  The Michigan Court of Appeals found no *Brady* violation because Petitioner failed to identify any exculpatory information that could have been used to impeach Dennis.  *Id.* at 590-91.

To demonstrate a *Brady* violation, (1) "[t]he evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching;" (2) "that evidence must have been suppressed by the State, either willfully or inadvertently;" and (3) "prejudice must have ensued."  *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999).  A

12

defendant does not have to show that "disclosure of the evidence would have ultimately led to an acquittal;" he must, instead "establish that in the absence of the evidence he did not receive a fair trial, 'understood as a trial resulting in a verdict worth of confidence.'" *Gumm v. Mitchell*, 775 F.3d 345, 363 (6th Cir. 2014), quoting *Kyles v. Whitley*, 514 U.S. 419, 434 (1995). "*Brady* generally does not apply to delayed disclosure of exculpatory information, but only to a complete failure to disclose. *United States v. Ross*, 703 F.3d 856, 881 (6th Cir. 2012) (internal quotation omitted). If previously undisclosed evidence is disclosed during trial, no *Brady* violation occurs unless the defendant can demonstrate prejudice. *Id.* at 881-82.

Petitioner fails to allege or show how the late disclosure of this transcript prejudiced the defense. Petitioner has not explained what the defense would have done if he had been given more time to review the transcript or how earlier disclosure of the transcript would have led to a different result. His speculation is inadequate to establish prejudice in the *Brady* context. *O'Neal v. Burt*, 582 F. App'x 566, 575 (6th Cir. 2014).

### D.  Right to an Impartial Jury Claim

Next, Petitioner argues that his right to an impartial jury was violated by the trial court's failure to interview jurors individually following the dismissal of one juror. At the start of the second day of the trial, a juror sent a note to the court stating:

> I can't do this. I am very scared, upset, feeling sick, frustrated, I didn't sleep last night. I am shaking, my chest hurts. It is too much for me to comprehend and remember.

Tr., 3/20/08, at 5, ECF No. 5-4, Pg. ID 485.

13

The trial court questioned the juror about what she had told the other jurors.  She said she had only told them that she felt frustrated and had not slept.  *Id.* at 6.  She did not go into further detail with the jurors.  The trial court then dismissed her from the jury and replaced her with one of two alternate jurors.  Defense counsel did not object nor did he request that the remaining jurors be questioned.

"As a matter of law, clearly established Supreme Court precedent requires that a criminal defendant be afforded the right to confront the evidence and the witnesses against him, and the right to a jury that considers only the evidence presented at trial."  *Doan v. Brigano*, 237 F.3d 722, 733 n.7 (6th Cir. 2001) (citations omitted), *overruled on other grounds by Wiggins v. Smith*, 539 U.S. 510 (2003).  The exposure of a juror or jury to "extrinsic evidence or other extraneous influence violates a defendant's Sixth Amendment rights, . . . and a state court decision that conflicts with this rule may justify habeas relief under the standard set forth in the AEDPA."  *Fletcher v. McKee*, 355 F. App'x 935, 937 (6th Cir. 2009).  The right to an impartial jury imposes on the trial judge the duty to investigate allegations of external jury influences.  *Remmer v. United States*, 347 U.S. 227, 229-230 (1954).  The Sixth Circuit Court of Appeals has held that a *Remmer* hearing is required "in all cases involving an unauthorized communication with a juror or the jury from an outside source that presents a likelihood of affecting the verdict."  *United States v. Rigsby*, 45 F.3d 120, 123 (6th Cir. 1995).  A defendant "must do more than simply raise the possibility of bias." Jackson v. Bradshaw, 681 F.3d 753, 766 (6th Cir. 2012).  Absent an outside influence on a juror or the jury, the need for a *Remmer*

14

hearing does not arise.  *United States v. Frost*, 125 F.3d 346, 377 (6th Cir. 1997).

Although finding the claim not preserved for appellate review, the Michigan Court of Appeals nevertheless reviewed the claim for plain error.  The Michigan Court of Appeals rejected Petitioner's argument that the trial court was required to question the remaining jurors to determine whether the dismissed juror had said anything that would taint them.  *Jackson*, 292 Mich. App. at 593.  The state court held: "The trial court's questioning of the dismissed juror did not reveal any information or circumstances to suggest that the remaining jurors had been exposed to improper influences or that their ability to render a fair and impartial verdict had been compromised."  *Id.*

An "extraneous influence" is "one derived from specific knowledge about or a relationship with either the parties or their witnesses." Id.  In a habeas corpus case, a state court's findings on whether, and how, an extraneous matter affected jury deliberations "deserve[ ] a 'high measure of deference.'"  *Mahoney v. Vondergritt*, 938 F.2d 1490, 1492(1st Cir. 1991), quoting *Rushen v. Spain*, 464 U.S. 114, 120 (1983).  Here, Petitioner fails to show that the Michigan Court of Appeals' decision was unreasonable.  It likely came as little surprise to the other jurors that a juror might feel upset or have disrupted sleep when serving on a jury for a crime involving murder.  The dismissed juror's comments did not relate specifically to Petitioner's guilt or innocence, did not reference any of the evidence presented during the first day of trial or convey a specific fear of Petitioner.  Therefore, it was reasonable for the state court to conclude that no improper influences impacted the jury's deliberations.

### E.      Confrontation Clause Claim

Petitioner's fourth habeas claim concerns an alleged violation of the Confrontation Clause.  Petitioner challenges the admission of Sergeant William Anderson's testimony regarding an interview with Dennis.  Sergeant Anderson testified that he interviewed Dennis at the hospital with the assistance of a nurse, Molly Otsuji.  Dennis was unable to speak at the time, so Sergeant Anderson asked him yes-or-no questions.  Dennis squeezed Otsuji's hand to indicate a "yes" and did not squeeze her hand to indicate a "no."  At trial Sergeant Anderson testified as to Dennis's "yes or no" responses as communicated to him by Otsuji.  Petitioner now argues that the admission of Otsuji's reports of Dennis's answers violated his right of confrontation because she did not testify at trial.

The United States Constitution's Sixth Amendment Confrontation Clause provides: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him."  U.S. Const. amend. VI.  "[T]he Sixth Amendment's right of an accused to confront the witnesses against him is . . . a fundamental right and is made obligatory on the States by the Fourteenth Amendment." *Pointer v. Texas*, 380 U.S. 400, 403 (1965).  The right to a trial by jury is based on the belief "'that the 'evidence developed' against a defendant shall come from the witness stand in a public courtroom where there is full judicial protection of the defendant's right of confrontation, of cross-examination, and of counsel.'"  *Id.* at 405 (quoting *Turner v. State of Louisiana*, 379 U.S. 466, 472-73 (1965)).  The Confrontation Clause bars out-of-court statements that are testimonial in nature unless the witness is unavailable and the

16

defendant had a prior opportunity to cross-examine the witness.  *Crawford v. Washington*, 541 U.S. 36, 68 (2004).

The Michigan Court of Appeals found that Nurse Otsuji's reports to Sergeant Anderson conveying Dennis's hand signals fell within the language-conduit rule. *Jackson*, 292 Mich. App. at 595-96.  The language-conduit rule provides that "[e]xcept in unusual circumstances, an interpreter is 'no more than a language conduit and therefore [the] translation" is viewed as the declarant's own.  *United States v. Cordero*, 18 F.3d 1248, 1253 (5th Cir. 1994) (internal quotation omitted).  The state court relied upon the factors identified in *United States v. Nazemian*, 948 F.2d 522 (9th Cir. 1991), to determine whether the statements should be considered those of Petitioner: "(1) whether actions taken after the conversation were consistent with the statements translated, (2) the interpreter's qualifications and language skill, (3) whether the interpreter had any motive to mislead or distort, and (4) which party supplied the interpreter."  *Jackson*, 292 Mich. App at 596, *citing United States v. Nazemian*, 948 F.2d 522, 527-528 (9th Cir. 1991). The Michigan Court of Appeals viewed the "yes or no" statements conveyed by Nurse Otsuji as Dennis's own statements and found no Confrontation Clause violation because Petitioner had an opportunity to cross-examine Dennis:

> Although Nurse Otsuji was not interpreting a foreign language, she was conveying Dennis's statements by reporting whether he used the signal to indicate "yes" or used the signal to indicate "no."  In this sense, Nurse Otsuji functioned as an interpreter by relaying Dennis's responses to Sergeant Anderson.  Further, there is no indication that any of the considerations set forth in *Nazemian*, 948 F.2d at 527-528, militate against application of the language-conduit rule in this case.  Defendant does not

assert that Nurse Otsuji was not qualified to assist in the manner that she did, nor does he impute to her any motive to mislead or distort.  Although Sergeant Anderson requested Nurse Otsuji's assistance, there is no indication that he purposely selected her for any reason other than that she was immediately available.  Thus, Nurse Otsuji's reports did not constitute an additional layer of hearsay because what she was reporting were the statements actually made by Dennis.  Additionally, although the statements that Dennis made with Nurse Otsuji's assistance in response to Sergeant Anderson's questions qualify as testimonial statements, defendant did not have a constitutional right to confront Nurse Otsuji because what she reported were properly considered to be Dennis's statements.  Defendant had a full opportunity to cross-examine Dennis, thus satisfying his Confrontation Clause rights.

*Jackson*, 292 Mich. App. at 596.

The *Nazemian* decision pre-dated *Crawford*.  There is disagreement among the Circuits about Nazemian's validity following *Crawford.*  The Ninth and Fifth Circuit Courts of Appeals have held that *Nazemian* is not inconsistent with *Crawford.  United States v. Orm Hieng*, 679 F.3d 1131, 1140-41 (9th Cir. 2012); *United States v. Budha*, 495 F. App'x 452, 454 (5th Cir. 2012).  *See also People v. Johnson*, 2016 WL 1072216, *3 (Mich. Ct. App. March 17, 2016).  Post-*Crawford*, the Eleventh Circuit Court of Appeals has held that an interpreter is the "declarant" for Confrontation Clause purposes and a defendant has a right to confront the interpreter.  *United States v. Charles*, 722 F.3d 1319, 1324-25 (11th Cir. 2013).  *Accord Taylor v. State*, 130 A.3d 509, 536-537 (Md. Jan. 27, 2016) (finding that the *Nazemian* decision does not "withstand scrutiny under the Supreme Court's current jurisprudence").  On habeas review, this Court need not decide between these two approaches because habeas review is available for an unreasonable application of "clearly established federal law, as determined by the Supreme Court."  28

18

U.S.C. § 2254(d).  A "disagreement among the circuit courts is evidence that a certain matter of federal law is not clearly established."  *Miller v. Colson*, 694 F.3d 691, 698 (6th Cir. 2012).  *See also Baranksi v. Fifteen Unknown Agents of Bureau of ATF*, 452 F.3d 433, 449 (6th Cir.2006) ("[T]his disagreement among the circuits ... shows that the [government] did not violate clearly established law.").  Given the split among circuit courts, and the lack of Supreme Court or Sixth Circuit precedent addressing the specific issue presented here, the Court concludes that Petitioner cannot show that the state court unreasonably applied "clearly established Federal law."  28 U.S.C. § 2254(d)(1).  Additionally, the circuit court split on this issue, supports a finding that the Michigan Court of Appeals' decision is one upon which "fairminded jurists" could disagree.  *Harrington,* 562 U.S. at 101.  Habeas relief is denied.

### F.     Judicial Misconduct Claim

Petitioner argues that he was denied his right to a fair trial by several of the trial court's rulings which, Petitioner claims, evidence judicial bias.  Additionally, Petitioner argues that the trial judge's bias was evident in his comment that there was no evidence of a robbery or intended robbery on the date of the offense, which was contrary to the evidence presented.

An impartial judge is a necessary component of a fair trial.  *In re Murchison*, 349 U.S. 133, 136 (1955).  The Supreme Court established the standard for assessing claims of judicial bias in *Liteky v. United States*, 510 U.S. 540 (1994).  The Supreme Court explained the measure of judicial conduct as follows:

> [O]pinions formed by the judge on the basis of facts introduced or events
> occurring in the course of the current proceedings, or of prior proceedings,
> do not constitute a basis for a bias or partiality motion unless they display a
> deep-seated favoritism or antagonism that would make fair judgment
> impossible.  Thus, judicial remarks during the course of a trial that are
> critical or disapproving of, or even hostile to, counsel, the parties, or their
> cases, ordinarily do not support a bias or partiality challenge.  They *may* do
> so if they reveal an opinion that derives from an extrajudicial source; and
> they *will* do so if they reveal such a high degree of favoritism or antagonism
> as to make fair judgment impossible.

*Id.* at 554.

With respect to the trial court's evidentiary rulings, the Michigan Court of Appeals found no evidence of bias.  *Jackson*, 292 Mich. App. at 598-99.  The state court found that the evidentiary rulings were in accordance with state rules of evidence, supported by "principled reasons, grounded in the evidence, and did "not reflect a deep-seated favoritism or antagonism to the extent that the exercise of fair judgment was not possible."  *Id.* at 599.

On habeas review the inquiry focuses on whether the trial judge's conduct rendered the trial fundamentally unfair.  "To violate a defendant's right to a fair trial, a trial judge's intervention in the conduct of a criminal trial would have to reach a significant extent and be adverse to the defendant to a substantial degree."  *McBee v. Grant*, 763 F.2d 811, 818 (6th Cir. 1985).  Although Petitioner disagrees with many of the trial court's rulings, he has not shown that the judge relied on extrajudicial sources in rendering his decisions or that he showed any degree of favoritism for the prosecution or antagonism for the defense.  The trial transcript shows the trial judge ruled carefully on

20

objections. The Court sees no bias in the trial court's rulings. This is not a case where the trial court's evidentiary rulings could be said to have indicated "a hostility to one of the parties, or an unwarranted prejudgment of the merits of the case, or an alignment on the part of the Court with one of the parties for the purpose of furthering or supporting the contention of such party." *Knapp v. Kinsey*, 232 F.2d 458, 465-67 (6th Cir. 1956).

Petitioner also challenges the trial court's impartiality based upon the trial court's misstatement of the evidence. During his opening statement, defense counsel characterized victim Donteau Dennis as a "thug, a thief, and a robber." 3/19/08 Tr. at 88-89, ECF No. 503, Pg. ID 368-69. During the testimony of Sergeant Anderson, the officer in charge of the case, the prosecutor asked whether Dennis had any armed robbery convictions. 3/24/08 Tr., at 34, ECF No. 5-5 at Pg. ID 688-89. Sergeant Anderson replied that he did not. *Id.* Defense counsel for Mason moved that Sergeant Anderson's statement regarding the lack of a criminal record be stricken from the record. *Id.* The trial court denied the motion, finding that this was in response to defense counsel's opening statement about Dennis being a "thug" because "there was no one out committing any armed robbery." *Id.* at 35, Pg. ID 690.

The Michigan Court of Appeals held that the trial court's comment on the evidence was inappropriate, but found no bias. The state court reasoned, in relevant part:

> [T]he trial court's statement was factually inaccurate given that Dennis admitted that he and Peterson left with Mason to "hit a lick," which he understood to mean to commit a robbery. However, the court's inaccurate statement did not deprive defendant of a fair trial. The statement was made in response to defense counsel's opening statement characterizing Dennis as

21

a thug, thief, robber, and "stick up man." There was no evidence that Dennis had any history of involvement in theft crimes, and the trial court explained to the jury that the attorneys' statements were not evidence. Considering the limited context in which the court's statements were made, they were not sufficient to pierce the veil of judicial impartiality and deprive defendant of a fair trial.

*Jackson*, 292 Mich. App. at 553-54.

The state trial court's statements, while inaccurate, did not result in an extreme malfunction of the criminal justice system. The trial court's statements were, as the Michigan Court of Appeals noted, limited when considered in the context of the entire trial. The Court finds that state appellate court's decision was not objectively unreasonable. Consequently, Petitioner is not entitled to relief on the basis of his judicial bias claim.

### G. Ineffective Assistance of Trial Counsel Claim

Petitioner next argues that his trial attorney was ineffective in failing to request the addict-informant jury instruction concerning Donteau Dennis' testimony. The addict-informant instruction advises a jury that it should consider an addict-informant's testimony with special scrutiny. Petitioner argues that competent counsel would have requested this instruction because Dennis was medicated when he gave his first statement implicating Petitioner.

The Michigan Court of Appeals rejected Petitioner's ineffective assistance of counsel claim. First, the state court rejected the premise that Dennis was an addict-informant. *Jackson*, 292 Mich. App. at 602. The fact that he was medicated while

hospitalized "did not make him an addict-informant." *Id.* The Michigan Court of Appeals also rejected Petitioner's claim that counsel should have requested a "medicated witness" instruction. *Id.* The state court found the general jury instructions on various factors the jury should consider in evaluating a witness's testimony generally "sufficient to enable the jury to properly consider Dennis's testimony." *Id.*

The AEDPA "erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." *Burt v. Titlow*, — U.S. — , 134 S. Ct. 10, 16 (2013). The standard for obtaining relief is "'difficult to meet.'" *White v. Woodall*, — U.S. —, 134 S. Ct. 1697, 1702 (2014), *quoting Metrish v. Lancaster*, 569 U.S. —, —, 133 S. Ct. 1781, 1786 (2013). In the context of an ineffective assistance of counsel claim under *Strickland v. Washington*, 466 U.S. 668 (1984), the standard is "all the more difficult" because "[t]he standards created by *Strickland* and § 2254(d) are both highly deferential and when the two apply in tandem, review is doubly so." *Harrington*, 562 U.S. at 105 (internal citations and quotation marks omitted). "[T]he question is not whether counsel's actions were reasonable"; but whether "there is any reasonable argument that counsel satisfied *Strickland*'*s* deferential standard." *Id.*

An ineffective assistance of counsel claim has two components. A petitioner must show that counsel's performance was deficient and that the deficiency prejudiced the defense. *Strickland*, 466 U.S. at 687. To establish deficient representation, a petitioner must demonstrate that counsel's representation "fell below an objective standard of reasonableness." Id. at 688. In order to establish prejudice, a petitioner must show that,

23

but for the constitutionally deficient representation, there is a "reasonable probability"
that the outcome of the proceeding would have been different.  *Id.* at 694.

The state court's decision on the propriety of a jury instruction is a matter of state
law the Court is bound to follow.  *Rashad v. Lafler*, 675 F.3d 564, 569 (6th Cir. 2012).
Thus, Petitioner cannot show that counsel was ineffective in failing to request the addict-
informant instruction where the Michigan Court of Appeals held that the instruction was
not justified under state law.

### H.    Jury Instruction Claims

Finally, Petitioner raises several claims that the trial court's jury instructions violated his right to due process.  He argues that the trial court's instructions failed to properly instruct the jury on the intent necessary to find Petitioner guilty of aiding and abetting, failed to require a unanimous verdict, and failed to properly instruct the jury on the premeditation and deliberation element of first-degree murder.

"It is a fundamental Constitutional law that no one may be convicted of a crime absent proof beyond a reasonable doubt of every fact necessary to constitute that crime." *Glenn v. Dallman*, 686 F.2d 418, 420 (6th Cir. 1982).  To show that a jury instruction violates due process, a habeas petitioner must demonstrate both that the instruction was ambiguous and that there was 'a reasonable likelihood' that the jury applied the instruction in a way that relieved the State of its burden of proving every element of the crime beyond a reasonable doubt."  *Waddington v. Sarausad*, 555 U.S. 179, 190-91 (2009) (citations omitted).  A petitioner is entitled to habeas relief only if the defective jury instruction "so infected the entire trial that the resulting conviction violates due process." *Cupp v. Naughten*, 414 U.S. 141, 147 (1973).  A federal court may not grant the writ of habeas corpus on the ground that a jury instruction was incorrect under state law, *Estelle v. McGuire*, 502 U.S. 62, 71-72 (1991), and "[a]n omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law."  *Henderson v. Kibbe*, 431 U.S. 145, 155 (1977).  The jury instruction "must be considered in the context of the instructions as a whole and the trial record."  *Estelle*, 502 U.S. at 72. A state court's

25

finding that challenged jury instructions "adequately reflected the applicable state law and corresponding state charges" is binding on federal habeas review.  *White v. Steele*, 629 F. App'x 690, 695 (6th Cir. 2015).  "The exception is when the instruction is so flawed as a matter of state laws as to "infect[] the entire trial' in such a way that the conviction violates federal due process."  *Rashad v. Lafler*, 675 F.3d 564, 569 (6th Cir. 2012), *quoting Kibbe*, 431 U.S. at154.

First, Petitioner argues that the trial court failed to instruct the jury on the intent necessary to find Petitioner guilty of aiding and abetting.  Under Michigan law, to establish that a defendant aided and abetted a crime, the prosecutor must show "that the defendant aided or abetted the commission of an offense and that the defendant intended to aid the charged offense, knew the principal intended to commit the charged offense, or, alternatively, that the charged offense was a natural and probable consequence of the commission of the intended offense.'" *People v. Robinson*, 475 Mich. 1, 6 (2006).  Petitioner raised this claim in his motion for relief from judgment.  The Michigan trial court found that the aiding and abetting instruction adequately conveyed to the jury all of the elements necessary to find Petitioner guilty under an aiding and abetting theory. 4/25/13 Order, ECF No. 5-8.

Here, the Court finds reasonable the trial court's finding that jury instructions, when viewed in their entirety, adequately informed the jury of the elements necessary to convict Petitioner under an aider and abettor theory.  The jury was instructed regarding the specific intent necessary to find Petitioner guilty under this theory.  Petitioner has not

26

shown that the instruction so infected the entire trial as to violate his right to due process.

Thus, Petitioner is not entitled to habeas corpus relief with respect to this claim.

Next, Petitioner argues that the trial court's instructions improperly allowed the

jury to find him guilty in the shooting of Donteau Dennis without requiring unanimity in

the verdict. There is no federal constitutional right to a unanimous verdict. *Rogers v.*

*Howes*, 64 F. App'x 450, 454 (6th Cir. 2003). In *Schad v. Arizona*, 501 U.S. 624 (1991),

the Supreme Court considered the constitutionality of an Arizona conviction rendered

pursuant to jury instructions that did not require the jury to agree on one of the alternative

theories of either premeditated murder or felony murder. The Supreme Court held that

the jury instructions allowing for a conviction based upon such alternative theories were

not unconstitutional. *Id.* at 630 (plurality opinion). The Supreme Court reasoned:

> We have never suggested that in returning general verdicts in such cases the
> jurors should be required to agree upon a single means of commission . . .
> In these cases, as in litigation generally, different jurors may be persuaded
> by different pieces of evidence, even when they agree upon the bottom line.
> Plainly there is no general requirement that the jury reach agreement on the
> preliminary factual issues which underlie the verdict.

*Id.* at 631-32 (internal quotation omitted).

Further, the Court held that:

> If a State's courts have determined that certain statutory alternatives are
> mere means of committing a single offense, rather than independent
> elements of the crime, we simply are not at liberty to ignore that
> determination and conclude that the alternatives are, in fact, independent
> elements under state law.

*Id.* at 636. Thus, while a jury must agree on all of the elements of an offense, it need not

agree on the means by which all of the elements were accomplished.  *Id.* at 631.  The

Constitution does not require that they unanimously find each element by a single theory.

*Id.* at 632.  Thus, Petitioner's unanimity claim fails to allege the denial of a federal

constitutional right.  *Accord United States v. Perry*, 401 F. App'x 56, 61-62 (6th Cir.

2010) (

 Finally, Petitioner challenges the first-degree murder jury instruction, arguing that

the jury was not properly instructed on the elements of premeditation and deliberation.

The trial court instructed the jury as follows:

> Premeditation means that the person thought about it before it was done ...
> There is no set amount of time as long as the person had the opportunity to
> think about what they were going to do and not do it.  Deliberation means
> you have an opportunity to deliberate, a moment for detached reflection and
> not commit the offense.

> And it is a cliche but it is often used that if you are driving down the street
> and you come to an intersection and the light is yellow and you have a split
> second to decide whether you are going to stop or whether you are going to
> go through, that is reflection.  That is deliberation.

> You have time to decide whether to stop when the light is yellow or to take
> a chance and go through it and it might turn red on you.  You thought about
> it.  That is deliberation.

Pet. at 46, ECF No. 1, Pg. ID 61, quoting 3/28/08 Tr., at 15-17.

 The Michigan trial court held that the instructions regarding premeditation and

deliberation did not differ significantly from the standard criminal jury instructions.  The

state court held that the instructions adequately defined the concepts of premeditation and

deliberation.  Petitioner has failed to show that the state court's decision that the court's

instructions adequately conveyed the concept of premeditation and deliberation was contrary to or an unreasonable application of Supreme Court precedent; nor has he shown that the instruction so infected the entire trial as to violate his right to due process. Thus, Petitioner is not entitled to habeas corpus relief with respect to this claim.

## IV. Certificate of Appealability

Federal Rule of Appellate Procedure 22 provides that an appeal may not proceed unless a certificate of appealability (COA) is issued under 28 U.S.C. § 2253. Rule 11 of the Rules Governing Section 2254 Proceedings now requires that the Court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." A COA may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The substantial showing threshold is satisfied when a petitioner demonstrates "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

The Court concludes that reasonable jurists would not debate the Court's conclusion that none of the claims in the habeas petition warrants relief. Therefore, the Court denies a certificate of appealability.

## V. Conclusion

The petition for a writ of habeas corpus and a certificate of appealability are **DENIED** and the matter is **DISMISSED WITH PREJUDICE.**

**SO ORDERED**.

29

         /s/ Victoria A. Roberts

VICTORIA A. ROBERTS
UNITED STATES DISTRICT JUDGE

DATE:   4/6/17